UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EDUARDO GUTIERREZ-VASQUEZ,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. 5:26-cv-04025-KES

ORDER PARTIALLY GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Eduardo Gutierrez-Vasquez ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 9.) The Petition is granted and Respondents are directed to immediately release Petitioner from custody. Petitioner is entitled to relief on Ground 2, because Respondents violated his Fifth Amendment procedural due process rights by failing to provide him with a pre-deprivation hearing before

re-detaining him. Because success on this claim merits release from custody, the Court finds it unnecessary to reach Petitioner's other claims.

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on July 19, 2026. (Dkt. 1.) The Petition raises the following claims:

Grounds 1 and 6: Respondents violated Petitioner's Fifth Amendment right to substantive due process because his detention is not rationally or reasonably related to any legitimate government purpose. (Pet. at 31, ¶¶ 100-06; id. at 35-37, ¶¶ 132-43.)

Ground 2: Respondents violated Petitioner's Fifth Amendment right to procedural due process "[b]ecause the government did not afford Petitioner a pre-deprivation hearing to determine whether changed circumstances going to flight risk or danger warrant[ed] [his] re-detention." (Pet. at 32-33, ¶¶ 107-13.)

Ground 3: Respondents violated Petitioner's Fourth Amendment rights "when they re-arrested Petitioner without a material change in circumstances." (Pet. at 33, ¶¶ 114-16.)

Ground 4: Respondents violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), because the decision to re-detain him was arbitrary and capricious. (Pet. at 33-34, ¶¶ 117-22.)

Grounds 5 and 9: Respondents violated Petitioner's Fifth Amendment right to procedural due process by giving him an "inadequate bond hearing" before an immigration judge ("IJ") on June 24, 2026, about six months after he was initially detained. (Pet. at 35-36, ¶¶ 127-29; id. at 39-40, ¶¶ 158-64.)

Ground 7: The IJ's failure "to properly apply Matter of Guerra" was an abuse of discretion. (Pet. at 37-38, ¶¶ 144-52.)

Ground 8: The IJ's failure "to set [a] reasonable bond amount" was an abuse of discretion. (Pet. at 38-39, ¶¶ 153-57.)

The Petition seeks declaratory relief as well as: (1) an order directing

Petitioner's immediate release from custody; and (2) an injunction preventing "Respondents from re-detaining Petitioner "unless his re-detention is ordered at a custody hearing before a neutral arbiter in which he is determined to be a flight risk or danger to the community in compliance with governing law and due process." (Pet. at 40-41 (prayer for relief).)[1]

Respondents answered the Petition on July 27, 2026. ("Answer" at Dkt. 7.) Respondents argue that Petitioner's grant of humanitarian parole expired automatically after one year. (Id. at 2.) They also argue that the Court should not excuse administrative exhaustion of his challenge to the IJ's bond decision, and that, in any case, these claims fail because "[r]eview of an IJ's bond decision is narrow and is constrained to ensuring that the IJ applied the correct legal standard, regardless of whether the district court disagrees with how the evidence was weighed." (Id. at 2.)

Petitioner replied on July 30, 2026. ("Reply" at Dkt. 11.)[2] Petitioner argues that, even though his parole automatically expired, he "remained in the U.S. past expiration of [his] parole with ICE's knowledge, and with their continuous monitor[ing] of Petitioner after the expiration." (Id. at 2.)[3]

---

[1] The Petition also seeks a declaration that Petitioner's detention is governed by 8 U.S.C. § 1226(a) rather than § 1225(b)(2). (Pet. at 40.) However, the Petition does not contain any claims or argument that would support granting this relief.

[2] Petitioner filed an initial Reply at Dkt. 10 and a corrected Reply at Dkt. 11.

[3] He also argues, for the first time, that because he has been detained for more than six months, he is entitled to release from custody under Zadvydas v. Davis, 533 U.S. 678 (2001) on the grounds that his removal is not significantly likely in the reasonably foreseeable future. (Reply at 3-4.) The Court generally does not consider claims raised for the first time in a Reply. Moreover, because this order grants the underlying Petitioner, it is unnecessary to decide whether Petitioner should be granted leave to amend the Petition to add this claim.

## III. FACTUAL RECORD

### A. Entry into U.S. and Release on Parole (Aug. 2021-Sept. 2025).

Petitioner is a 39-year-old native and citizen of Venezuela. (Pet. at 6, ¶¶ 25, 26.) He entered the United States on July 30, 2021, and, "nearly immediately after [his] arrival," he was detained in Texas. (Pet at 6, ¶ 26; id. at 11, ¶ 42.) His detention lasted only "a few days." (Id.) On August 10, 2021, he was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and released from detention. (Pet. at 6, ¶ 26; id. at 11, ¶ 42.) He was served with an "Interim Notice Authorizing Parole," which stated in relevant part:

> This letter is to inform you that [ICE] has decided to parole you from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act ["INA"]. This notice is being issued to you in lieu of Form I-94, *Arrival-Departure Record*, *see* 8 C.F.R. § 235.1(h)(2),[4] and you should maintain a copy of this letter in your possession at all times.
>
> Your parole authorization is valid for one year beginning from the date on this notice [August 10, 2021] and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion. ICE may also terminate parole on notice prior to the automatic termination date. Parole is entirely within the discretion of ICE and can be terminated at any time and for any reason. Your parole is not valid for work authorization and is not an

---

[4] See 8 C.F.R. § 235.1(h)(1) ("Unless otherwise exempted, each arriving nonimmigrant who is admitted to the United States will be issued a Form I-94 as evidence of the terms of admission."); id., § 235.1(h)(2) ("Any alien paroled into the United States under section 212(d)(5) of the [INA] … shall be issued a completely executed Form I-94, endorsed with the parole stamp.").

> admission in lawful status.
>
> Parole is conditioned on you complying with the terms and conditions of your release. You must notify ICE and the [IJ] of any address correction or address change. You must report for every scheduled hearing before the immigration court and every appointment as directed by ICE (including for removal from the United States should you become subject to a final removal order). You must not violate any local, State, or Federal laws or ordinances. You must comply with any other specified conditions if identified separately.
>
> . . .
>
> You have been released from [DHS] custody pending a final decision in your exclusion/deportation hearing. It is understood that you will be residing at the above address. As stated on the previous page, you are required to notify the [IJ] (at the address shown below) of any address correction or change. …

(Pet. Ex. A / Dkt. 1-1 at 3-4.) Petitioner was instructed to appear for an ICE check-in approximately seven months later, on March 1, 2022. (Id. at 4.)

Petitioner applied for asylum by filing a Form I-589 with U.S. Citizenship and Immigration Services ("USCIS"). (Pet. at 6, ¶ 28; see also Pet. Ex. B / Dkt. 1-1 at 6 (notice of biometrics appointment in connection with I-589 application).) In 2023, he also applied for Temporary Protected Status ("TPS") due to being a Venezuelan national, and he received an Employment Authorization Document due to this application. (Pet. at 6, ¶ 29; Pet. Ex. C / Dkt. 1-1 at 8 (notice of receipt of I-821, TPS application).)

Upon being released on parole, Petitioner was required to attend appointments with ICE and hearings in immigration court. (Pet. at 6, ¶ 26.) He "followed all his instructions and attended all his appointments, never missing a

single one." (Pet. at 6, ¶ 26; id. at 11, ¶ 43.) He has never been arrested throughout his time in the United States and has no criminal record. (Pet. at 6, ¶ 27.)

**B. Current Detention (Sept. 2025-Present).**

About four years after he had been released on parole, on September 29, 2025, he appeared for his credible fear interview with ICE as part of the asylum process. (Pet. at 7, ¶ 30.) The asylum officer found that he a had a credible fear of persecution based on his political beliefs. (Pet. at 7, ¶ 30; Pet. Ex. D / Dkt. 1-1 at 10-11 (Credible Fear Determination Checklist and Written Analysis, indicating a positive fear determination).)

Nevertheless, on the same day, Petitioner was detained by ICE. (Pet. at 7, ¶ 30.) He was served with an NTA stating that he is removable under the following INA provisions:

> Section 212(a)(7)(A)(i)(I) of the [INA] as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA], and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the [INA].
>
> Section 212(a)(6)(A)(i) of the [INA], as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

(Pet. Ex. E / Dkt. 1-1 at 13-14 (the NTA).) It appears that DHS had never previously initiated removal proceedings against Petitioner.

**C. Bond Hearing (June 2026)**

DHS "initially asserted that Petitioner was not entitled to a bond hearing

because he was an applicant for admission, subject to mandatory [detention] under 8 U.S.C. § 1225(b)(2) and because he was a recent arrival under Matter of Q-Li, 29 I&N Dec. 66 (BIA 2025)." (Pet. at 7, ¶ 33.)

After he had been in custody for about six months, on June 24, 2026, Petitioner was granted a Rodriguez bond hearing[5] before an IJ. (Pet. at 7, ¶ 34; see also Pet. Ex. G / Dkt. 1-1 at 20-56 (materials Petitioner submitted to the IJ).) The IJ denied bond. In a short written order issued the same day, the IJ explained, "[DHS] met its burden to establish by clear and convincing evidence that [Petitioner's] release would pose such a significant flight risk that no amount of bond would be appropriate." (Pet. Ex. F / Dkt. 1-1 at 17 (IJ's written decision).)

Petitioner appealed the IJ's bond decision to the BIA, and that appeal remains pending. (Pet. at 8, ¶ 38.) It is unknown how long the appeal process will take. (Pet. at 11, ¶ 44.) On July 22, 2026, in response to Petitioner's appeal, the IJ issued a longer written bond order. (Answer Ex. A / Dkt. 7-1.)[6]

**D. Current Status.**

Petitioner remains in immigration custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 220-442-228 (Venezuela), last accessed Aug. 5, 2026). Public records do not show any hearings currently scheduled in his removal case, even though he has been detained for almost a year.

---

[5] Rodriguez v. Holder, No. 07-cv-3239-TJH-RNB, 2013 WL 5229795, at *3 (C.D. Cal. Aug. 6, 2013), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F. 3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 138 S. Ct. 830 (2018).

[6] Although Petitioner implies that this later, written decision was somehow improper (see Reply at 4 ("[W]hy did it take the IJ to file another decision about thirty (30) days later when he had already filed a written decision[?]")), it appears to be consistent with standard practice in immigration court (see Answer Ex. A / Dkt. 7-1 at 2 (citing Immigration Court Practice Manual, Chap. 8.3(e)(7) (Feb. 10, 2026)).

See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 220-442-228 (Venezuela), last accessed Aug. 5, 2026).

**IV. DISCUSSION**

**A. Exhaustion of Administrative Remedies.**

**1. The Parties' Arguments.**

Respondents argue, "Petitioner has not demonstrated why the Court should excuse administrative exhaustion of the IJ's decision." (Answer at 6.) Petitioner argues, "Exhaustion to the [BIA] is not required" and "should be waived because administrative remedies are inadequate, and exhaustion would be futile." (Pet. at 11-12.) He cites statistics and news articles indicating that the BIA rarely, if ever, overturns an IJ's finding of flight risk or danger. (Id. at 12-13.) He also argues he would suffer "irreparable harm through prolonged, unconstitutional detention." (Id. at 13.)

**2. Legal Standard.**

For habeas petitions filed under 28 U.S.C. § 2241, the exhaustion requirement is prudential, rather than jurisdictional. See generally Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Id. (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

**3. Analysis.**

The parties' exhaustion arguments seem to be mainly directed toward the claims challenging Petitioner's Rodriguez bond hearing (Grounds 5, 7, 8, and 9). However, as discussed further below, this order does not reach those claims. The only claim decided in this order is Ground 2, Petitioner's claim that he was entitled to a pre-detention hearing as a matter of procedural due process. Raising such a

claim in immigration court would be futile. See, e.g., R.N.G. v. Semaia, --- F. Supp. 3d ----, No. 26-cv-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026) (finding "Petitioner's claim falls squarely into the futility exception to prudential exhaustion" because the "administrative remedy Respondents suggest – a post-deprivation Rodriguez bond hearing before an [IJ] – would be incapable of addressing the injury alleged"). Accordingly, to the extent Respondents' exhaustion arguments are directed toward Ground 2, the Court finds exhaustion excused on the grounds of futility and irreparable injury to Petitioner.

**B. Petitioner is Entitled to Relief on Ground 2, His Due Process Claim Based on Failure to Provide a Pre-Deprivation Hearing.**

**1. The Parties' Arguments.**

In Ground 2, Petitioner argues that Respondents violated his Fifth Amendment right to procedural due process "[b]ecause the government did not afford Petitioner a pre-deprivation hearing to determine whether changed circumstances going to flight risk or danger warrant[ed] [his] re-detention." (Pet. at 32-33, ¶¶ 107-13.) Respondents argue that such a hearing is not required under the INA or DHS regulations, because Petitioner's humanitarian parole expired automatically after one year. (Answer at 3 (citing 8 C.F.R. § 212(e)(1)(i)-(ii), (2)(i)).) They argue, "[H]e has not identified cases finding pre-detention notice or hearings are required where parole *automatically expires*—nor does his Petition include evidence that ICE formally extended his parole, as opposed to simply exercised its discretion to not take him back into custody. The distinction between expiration and revocation undermines Petitioner's argument." (Id.)

Petitioner replies that he "had a 'De Facto Revocation,'" because he "remained in the U.S. past expiration of [his] parole with ICE's knowledge…." (Reply at 2.) He argues, "When ICE requires an individual to comply with check-ins or Alternatives to Detention (ATD) post-expiration [of the noncitizen's parole], they are maintaining a regulatory relationship. This is what happened with

Petitioner as he continued to be monitored by ICE." (Id. at 3.)

**2. Legal Standard.**

a. Humanitarian Parole.

Noncitizens may be paroled into the United States for "urgent humanitarian reasons" or "significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). That statute provides:

> The Secretary of Homeland Security may … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

The implementing DHS regulation states that, to be granted such parole, the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

That regulation further provides that termination of this parole may be "automatic" or "on notice." 8 C.F.R. § 212.5(e)(1), (2). Parole "shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized." Id., § 212.5(e)(1). "[I]n the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required." Id.

Paragraph (e)(2) states that the noncitizen "shall be restored to the status that he or she had at the time of parole." Id., § 212.5(e)(2). "Any further inspection or hearing shall be conducted under section 235 or 240 of the [INA] and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody." Id.

b. Due Process.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**3. Analysis.**

a. Liberty Interest and Private Interest Affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Analogizing to Morrissey v. Brewer, 408 U.S. 471 (1972), many district courts in this circuit have held that noncitizens previously released from ICE custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). This includes noncitizens paroled into the U.S. under § 1182(d)(5). See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. Jan. 23, 2026) ("While the Government's initial decision to parole Petitioner was discretionary, see 8 U.S.C. § 1182(d)(5), that decision nonetheless contained an 'implicit promise that parole will be revoked only if he fails to live up to the parole conditions.' … For nearly three years, Petitioner relied on this promise to become 'gainfully employed,' live 'with family and friends,' and 'form the other enduring attachments of normal life.' … The length of Petitioner's release on parole further strengthens his private interest in his continued freedom from immigration detention.") (quoting Morrissey, 408 U.S. at 482); see also Nieves v. Mullin, No. 26-cv-1471-DOC-DSR, 2026 WL 931143, at *3 (C.D. Cal.

Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-3412-SPG-MBK, 2026 WL 136229, at *4 (C.D. Cal. Jan. 13, 2026).

Even though Petitioner's parole automatically expired in August 2022, he retained a constitutionally protected liberty interest in remaining free from ICE custody. As one court has reasoned:

> [P]etitioner's liberty interest did not expire along with his parole. …
>
> Under the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released "pending a final decision" in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was granted a five-year work authorization permit during his year on parole status, petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case.
>
> [¶] This conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time...." 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Here, not only is there is no removal order against petitioner, but petitioner had also not even had an initial hearing in his removal proceedings when agents re-detained him.

Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); see also Quiroz v. Larose, No. 26-cv-866, 2026 WL 673822, at *2 n.1 (S.D. Cal. Mar. 10, 2026) (collecting cases finding that the automatic "expiration of [a noncitizen's] parole does not impact the liberty interest in his release"); Amatbek Uulu v. Scott, No. 26-cv-774, 2026 WL 865813, at *5 (W.D. Wash. Mar. 30, 2026) (finding that,

even "if Petitioner's parole [had] expired [automatically], the government violated 8 C.F.R. § 212.5(e)(2)(i) by failing to provide the process provided therein").[7]

The Court finds this reasoning persuasive. Like the noncitizen in Omer G.G., Petitioner was released "pending a final decision" in his removal proceedings (Pet. Ex. A / Dkt. 1-1 at 3-4), which has not yet issued, and he was subsequently granted a work authorization permit (Pet. at 6, ¶ 29). These circumstances together constituted an implicit promise, upon which Petitioner reasonably relied, that he would not be detained absent some changed circumstance demonstrating that he was a danger to the community or a flight risk, or that his removal was imminent. As discussed further below, there is no evidence of any of those circumstances.

b. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

"In releasing Petitioner on humanitarian or significant public benefit parole,"

---

[7] But see Rodriguez-Meza v. Bondi, No. 26-cv-01120-FLA-SK, 2026 WL 980233, at *4 (C.D. Cal. Apr. 9, 2026) ("[The] cases Petitioner cites are inapposite and distinguishable, as those petitioners' paroles had not terminated automatically at the expiration of the time for which parole was authorized, unlike here. Petitioner does not cite any legal authority to establish that an alien cannot lawfully be arrested and detained upon the automatic termination of their parole absent notice, a pre-deprivation hearing, and additional changed circumstances as she argues is required.").

DHS "necessarily found Petitioner did not pose a significant flight risk or danger to the community." Medrano-Rocha, 817 F. Supp. 3d at 879 (citing 8 C.F.R. § 212.5(b)). Respondents have never explained—either to Petitioner at the time of his arrest or in the present proceedings—what factual basis ICE has (if any) for changing the prior determination that he was not a flight risk or danger to the community. There is no evidence, for example, that Petitioner violated the conditions of his release. Respondents do not dispute Petitioner's allegations that he "followed all his instructions and attended all his appointments" (Pet. at 6, ¶ 26; id. at 11, ¶ 43) and has no criminal record (id. at 6, ¶ 27).

"The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025); Ramos-Maldonado v. Semaia, No. 26-cv-1202-SSS-AS, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *10 (C.D. Cal. Mar. 18, 2026) ("In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *5 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record."). A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

c. Countervailing Government Interest

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado v. Semaia, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (same). Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate Remedy is Release, Not Post-Deprivation Hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See, e.g., Gudavasov, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-

deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").[8]

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha, 817 F. Supp. 3d at 882-83; Nieves, 2026 WL 931143, at *4; Fernandez, 2026 WL 136229, at *7.

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

**C. Petitioner's Other Claims Are Dismissed.**

Besides the due process claim in Ground 2, Petitioner raises other claims that challenge the procedures used to re-detain him (Ground 3), claims challenging his Rodriguez bond hearing (Grounds 5, 7, 8, and 9), and claims arguing his detention serves no proper purpose (Grounds 1, 4, and 6). However, because granting Petitioner relief on Ground 2 would grant all of the relief sought in the Petition, the Court declines to reach Petitioner's other claims.

//

//

//

//

//

[8] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. The Petition is granted as to Ground 2, and the other claims are dismissed.

2. Respondents shall **immediately release** Eduardo Gutierrez-Vasquez (A# 220-442-228) from custody.

3. If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[9]

DATED: August 6, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[9] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).